## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NAFIS ALLEN,** | : | |
| **Plaintiff** | : | |
| | : | **No. 1:21-cv-182** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **JOHN WETZEL, *et al.*,** | : | |
| **Defendants** | : | |

## MEMORANDUM

Presently before the Court are the motion to dismiss (Doc. No. 19) filed by Defendants John Wetzel ("Wetzel") and Kevin Ransom ("Ransom") and the motion to dismiss or, in the alternative, for summary judgment (Doc. No. 24) filed by Defendants Wellpath and Jorge Dominic ("Dominic"). *Pro se* Plaintiff Nafis Allen ("Allen") has filed neither responses nor a motion seeking an extension of time to do so. Accordingly, because the time periods for responding have expired, the motions are ripe for disposition.

## I.    BACKGROUND

### A.    Procedural History and Summary of Plaintiff's Complaint

Plaintiff , who is currently incarcerated at the State Correctional Institution in Dallas, Pennsylvania ("SCI Dallas"), initiated the above-captioned action on January 11, 2021 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants in the United States District Court for the Eastern District of Pennsylvania. (Doc. No. 2.) On January 29, 2021, that court transferred the matter to this Court for further

proceedings. (Doc. No. 4.) In his complaint, Plaintiff complaints about conditions at SCI Dallas as they relate to the COVID-19 pandemic. (Doc. No. 2 at 1-2.) He alleges that Defendants have: (1) failed to enforce social distancing and the wearing of face masks by staff; and (2) failed to force staff to take COVID-19 tests. (*Id.* at 2.) Plaintiff claims that in November of 2020, his COVID-19 test came back negative, but he was subsequently transferred to the Restricted Housing Unit ("RHU"). (*Id.*) Plaintiff avers that he came into contact with inmates and staff who had tested positive with COVID-19. (*Id.*) Plaintiff tested positive for COVID-19 in December of 2020. (*Id.*) He avers that he has chronic asthma and he "became at serious foreseeable risk of death." (*Id.*) Based on the foregoing, Plaintiff asserts violations of his Eighth Amendment rights. (*Id.* at 1-3.) He seeks injunctive relief as well as damages. (*Id.* at 3.)

Defendants Wetzel and Ransom filed their motion to dismiss and brief in support thereof on April 20, 2021. (Doc. Nos. 19, 20.) On April 26, 2021, Plaintiff filed an extension of time to provide documents related to service of process. (Doc. No. 21.) In an Order dated that same day, the Court denied the motion as unnecessary to the extent Plaintiff sought an extension to provide documents to effect service of process, but granted him a thirty (30)-day extension to respond to the motion to dismiss. (Doc. No. 22.) Defendants Wellpath and Dominic filed their

motion to dismiss or, in the alternative, for summary judgment and supporting materials on April 27, 2021. (Doc. Nos. 24, 25.) They argue, *inter alia*, that Plaintiff failed to exhaust his administrative remedies. (Doc. No. 25.) In its April 27, 2021 Order, the Court informed the parties that, pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018), it would consider the exhaustion issue in the context of summary judgment, and by doing so, would consider matters outside the pleadings in its role as factfinder. (Doc. No. 28.) Accordingly, the Court directed Plaintiff to respond to Defendants' motion within thirty (30) days. (*Id.*) As noted above, however, Plaintiff has not responded to either motion. Defendants Wetzel and Ransom filed a certificate of concurrence as to the motion filed by Defendants Wellpath and Dominic on May 21, 2021. (Doc. No. 29.)

## B. Summary of the Department of Corrections ("DOC")'s Response to COVID-19

The DOC has provided publicly available information regarding its response to the COVID-19 pandemic. *See COVID-19 and the DOC*, https://www.cor.pa.gov/PAges/COVID-19.aspx (last accessed June 1, 2021 12:45 p.m.). In-person visitation has been suspended since March 13, 2020. *See id.* "All new inmates are being screened before being admitted into prison," and the DOC is not accepting inmates with flu-like symptoms from county institutions. *See id.* The DOC has provided inmates with disposable masks and "strongly encourage[s]

3

inmates" to use them. *See id.* Moreover, inmates "are being provided materials to clean their cell[s] daily. Materials will be provided to them on a daily basis." *See id.* Institutions are conducting town hall meetings with inmates "to review sanitation guidelines and COVID-19 information for awareness." *See id.* Correctional Industries has increased the production of anti-bacterial soap, and soap is provided free of charge to all inmates. *See id.*

With respect to staff members, all facilities conduct "enhanced screening for all individuals entering a facility. No one will be permitted to enter a facility who has a fever over 100 degrees or exhibits signs of cold or flu." *See id.* Staff are required to wear masks, and "institutions have provided each staff member with a cloth mask for use." *See id.* Daily updates are provided to all staff members, and PPE has been provided to all staff. *See id.* Employees are advised to stay home if they are sick. *See id.*

Each institution "has plans in place for quarantine if an inmate tests positive." *See id.* All gyms, barber shops, and cosmetology areas have been closed until further notice, as have the general libraries. *See id.* DOC officials have also reduced the inmate population where they can by furloughing paroled individuals from centers to home plans, maximizing parole releases, expediting the release process for anyone

with a pending home plan, and reviewing inmates who are beyond their minimum sentences. *See id.*

The DOC has also begun to vaccinate inmates and staff. "Non-medical staff and inmates are in Phase 1B, with vulnerable inmates being prioritized." *See id.* All inmates will be offered the vaccine. *See id.* No one will be required to receive the vaccine, but the DOC will focus on "encouraging vaccination for those inmates in the long-term care setting who are most vulnerable." *See id.* As of June 1, 2021, there is one (1) active case of COVID-19 among the inmates at SCI Dallas. *See id.* There has been a total of 1,278 inmates cases at SCI Dallas, with eleven (11) deaths. *See id.* There are two (2) active cases among staff at SCI Dallas, with a total of 275 staff cases. *See id.*

## II.     STANDARDS OF REVIEW

### A.     Motion to Dismiss, Federal Rule of Civil Procedure 12(b)(6)

When ruling on a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn from them, viewed in the light most favorable to the plaintiff. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The Court's inquiry is guided by the standards of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Under *Twombly* and *Iqbal*,

pleading requirements have shifted to a "more heightened form of pleading." *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). To prevent dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. *Id.* The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. As the Supreme Court instructed in *Iqbal*, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).

Accordingly, to determine the sufficiency of a complaint under *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when determining the sufficiency of a complaint under Rule 12(b)(6): (1) identify the elements a plaintiff must plead to state a claim; (2) identify any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In ruling on a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). A court may also consider "any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d Ed. 2004)); *see also Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (noting that when considering a motion to dismiss, courts may consider "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading").

In the context of *pro se* prisoner litigation specifically, the court must be mindful that a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond a doubt

that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

### B. Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.* at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963

F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*,

826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## C. Civil Rights Statute, 42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials. *See* 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

*Id.* "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." *See Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

## III.   STATEMENT OF MATERIAL FACTS[1]

On March 22, 2021, counsel for Defendants Wellpath and Dominic contacted the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") to see whether it had received any final level grievance appeals from Plaintiff. (Doc. No. 24-1 ¶ 4.) "Keri Moore, the Assistant Chief of SOIGA, responded the following day, confirming that SOIGA has 'not received any appeals from this inmate.'" (*Id.* ¶ 5.) Defendants Wellpath and Dominic then contacted SCI Dallas and requested copies of all grievances filed by Plaintiff from January 2020 until the present, "regardless of whether they were appealed." (*Id.* ¶ 6.) In response, SCI Dallas produced copies of four (4) grievances, none of which are related to Plaintiff's complaint. (*Id.* ¶¶ 7-8.)

The DOC's grievance policy, DC-ADM 804, states, "The Inmate Grievance

---

[1] The Local Rules provide that in addition to the requirement that a party file a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried." *See* M.D. Pa. L.R. 56. 1. The Rule further requires the inclusion of references to the parts of the record that support the statements. *See id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party. *See id.* Unless otherwise noted, the background herein is derived from the Rule 56.1 statement of facts filed by Defendants Wellpath and Dominic. (Doc. No. 24-1.) Plaintiff has not filed a responsive statement to Defendants' Rule 56.1 statement of facts. Accordingly, unless otherwise noted, the Court deems the facts set forth by Defendants to be undisputed. *See* Fed. R. Civ. P. 56(e)(2); M.D. Pa. L.R. 56.1; *United States v. Alberto*, No. 3:18-cv-1014, 2020 WL 730316, at *2 (M.D. Pa. Feb. 13, 2020) (concluding that the "[f]ailure to file this [responsive statement of material facts] results in admission of the moving party's statement of facts").

System is intended to deal with a wide range of issues, procedures, or events that may be of concern to an inmate." (*Id.* ¶ 9.) When submitting a grievance, inmates must: (1) identify the event giving rise to the grievance; (2) identify the individuals involved; (3) "state specific any claims [they] wish[] to make concerning violations of Department directives, regulations, court orders, or other law"; and (4) request "specific relief if the inmate desires compensation or other legal relief normally available from a court." (*Id.* ¶ 10.) "Plaintiff has failed to submit a single grievance related to his concerns about COVID-19 exposure." (*Id.* ¶ 11.)

## IV. DISCUSSION

### A. Claims Against Defendant Wellpath

Wellpath has contracted with the DOC to provide medical care to inmates housed at SCI Dallas and other state institutions. The Third Circuit, however, has held that "a private health care company providing services to inmates 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'" *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (quoting *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003)). Rather, a plaintiff must allege that the private healthcare company had "a relevant . . . policy or custom, and that the policy caused the constitutional violation [he] allege[s]." *Natale*, 318 F.3d at 584); *see also Lomax v. City of*

*Philadelphia*, No. 13-cv-1078, 2017 WL 1177095, at *3 (E.D. Pa. Mar. 29, 2017) ("Because [defendant] is a private company contracted by a prison to provide health care for inmates, . . . it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs."). Here, Plaintiff fails to allege any facts demonstrating that the alleged violations of his Eighth Amendment rights resulted from any policies, practices, or customs set forth by Defendant Wellpath. *See McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (noting that to assert a plausible claim, the plaintiff "must identify [the] custom or policy, and specify what exactly that custom or policy was"). For that reason alone, Plaintiff's claims against Defendant Wellpath are subject to dismissal.

### B.    Claims Against Defendants Wetzel, Ransom, and Dominic

For a § 1983 claim to survive a motion to dismiss, the plaintiff must sufficiently allege that the defendant was personally involved in the act or acts that the plaintiff claims violates his rights. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *see also Solan v. Ranck*, 326 F. App'x 97, 100 (3d Cir. 2009).

Here, it appears that Plaintiff seeks to proceed against Defendants Wetzel and Ransom based upon their respective supervisory positions as Secretary of the DOC and Superintendent of SCI Dallas.  Supervisors, however, "may not be held liable

14

for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *See Iqbal*, 556 U.S. at 676. The Third Circuit has noted that there are two theories of supervisory liability applicable to claims brought pursuant to § 1983: (1) "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"; and (2) policymakers may also be liable under § 1983 "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice[,] or custom which directly caused [the] constitutional harm.'" *See A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). With respect to the second theory of liability, the plaintiff must allege that "(1) existing policy or practice creates an unreasonable risk of constitutional injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *See Merring v. City of Carbondale*, 558 F. Supp. 2d 540, 547 (M.D. Pa. 2008) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

In the instant case, Plaintiff's complaint fails to set forth plausible supervisory liability claims against Defendants Wetzel and Ransom. Plaintiff fails to allege facts indicating that Defendants Wetzel and Ransom personally witnessed staff members

not wearing face masks and taking COVID-19 tests and condoned or acquiesced in this behavior. Likewise, there are no facts suggesting that Defendants Wetzel and Ransom directed staff members to not wear face masks and not take COVID-19 tests. While supervisors cannot encourage constitutional violations, a supervisor has "no affirmative constitutional duty to train, supervise or discipline so as to prevent such conduct." *See Chinchello v. Fenton*, 805 F.2d 126, 133 (3d Cir. 1986). The Court, therefore, agrees that Plaintiff has failed to set forth plausible supervisory liability claims against Defendants Wetzel and Ransom.

Plaintiff has also named Dominic, the CEO of Wellpath, as a Defendant in this matter. The complaint, however, is completely devoid of any facts alleging how Defendant Dominic violated Plaintiff's constitutional rights. Rather, it appears that Plaintiff has named Defendant Dominic solely because of his position as CEO of Wellpath. Plaintiff, therefore, has failed to allege the requisite personal involvement to state a plausible claim for relief against Defendant Dominic. *See Foye v. Wexford Health Sources, Inc.*, 675 F. App'x 210, 215 (3d Cir. 2017).

### C. Eighth Amendment Claims

In order to succeed on a claim as to one's conditions of confinement, a plaintiff must establish that: "(1) he was incarcerated under conditions imposing a substantial risk of serious harm, (2) the defendant-official was deliberately

indifferent to that substantial risk to his health and safety, and (3) the defendant-official's deliberate indifference caused him harm." *See Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2015), *abrogated in party on other grounds by Mack v. Yost*, 968 F.3d 311 (3d Cir. 2020). "[T]he Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Therefore, conditions of imprisonment violate the Eighth Amendment only if they, "alone or in combination . . . deprive inmates of the minimal civilized measures of life's necessities." *See id.* at 347. Such necessities include "adequate food, clothing, shelter, and medical care." *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Thus, "extreme deprivations are required to make out a conditions-of-confinement claim." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). However, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019) (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991) and *Rhodes*, 452 U.S. at 347).

In the instant case, Defendants do not dispute that the COVID-19 pandemic constitutes a substantial risk of harm to inmates. (Doc. No. 20 at 7); *see also Dixon*

*v. United States*, No. 20-5994, 2020 WL 3249231, at *3 (D.N.J. June 16, 2020) (concluding that the inmate-plaintiff could meet the objective prong of an Eighth Amendment claim "because COVID-19 is a very contagious virus that can cause serious health complications or death in vulnerable people"). The Court, however, agrees with Defendants that Plaintiff has failed to allege facts suggesting that Defendants demonstrated deliberate indifference to the risk posed by COVID-19. As noted *supra*, the DOC has adopted detailed preventative steps to mitigate the risk to inmates and staff and to control the spread of COVID-19 through the state correctional institutions. The Court may take judicial notice of this information, as it is publicly available on a governmental website. *See Vanderklok v. United States*, 868 F.3d 189, 205 (3d Cir. 2017). "A review of these steps suggests that DOC officials, including Defendants, have not acted unreasonably with respect to the threat posed by COVID-19 and instead have instituted measures to safeguard the entire inmate population, including Plaintiff." *Bevins v . Kauffman*, No. 1:20-cv-2012, 2021 WL 322168, at *5 (M.D. Pa. Feb. 1, 2021).

While the Court understands Plaintiff's legitimate concerns regarding the COVID-19 pandemic, it agrees with the numerous courts throughout the nation that have concluded that similar allegations do not support a plausible inference that officials have demonstrated deliberate indifference to inmates' Eighth Amendment

rights. *See, e.g., Swain v. Junior*, 958 F.3d 1081, 1089 (11th Cir. 2020) (granting defendants' motion to stay the district court's grant of a preliminary injunction on the basis that, *inter alia*, the plaintiffs had not demonstrated that defendants were deliberately indifferent to the risk posed by COVID-19 because the correctional facility had "implemented many measures to curb the spread of the virus"); *Bevins*, 2021 WL 322168, at *5; *Wilkins v. Wolf*, No. 1:20-cv-2450, 2021 WL 1578250, at *6-7 (M.D. Pa. Apr. 22, 2021) (finding that inmate-plaintiff had failed to state an Eighth Amendment claim regarding an alleged inadequate response to the COVID-19 pandemic); *Wylie v. Bonner*, No. 2:20-cv-2593-TLP-tmp, 2021 WL 261280, at *4-6 (W.D. Tenn. Jan. 26, 2021) (finding that inmate-plaintiff had failed to state an Eighth Amendment conditions of confinement claim because he failed to allege that staff knew of and disregarded the risks posed by COVID-19); *Shokr v. LeBlanc*, No. 20-488, 2020 WL 8093228, at * (M.D. La. Dec. 14, 2020) (concluding that the inmate-plaintiff had failed to state a plausible Eighth Amendment claim because measures were being taken to combat the COVID-19 virus); *Kesling v. Tewalt*, 476 F. Supp. 3d 1077, 1086-88 (D. Idaho 2020) (concluding that inmate-plaintiff's amended complaint failed to set forth a plausible Eighth Amendment claim when prison officials had developed and instituted policies to curb the spread of COVID-19); *McKissic v. Barr*, No. 1:20-cv-526, 2020 WL 3496432, at *6 (W.D. Mich. June

29, 2020) (concluding that inmate-plaintiff failed to state an Eighth Amendment claim where defendants had taken "significant measures . . . to secure prisoner safety and prevent infection" and the plaintiff's "speculation about the mere possibility that he will become infected does not rise to the level of an Eighth Amendment violation"). Indeed, "the Eighth Amendment does not require perfection on the part of prison officials." *See Wylie*, 2021 WL 261280, at \*6.

The Court is sympathetic to the fact that Plaintiff suffers from chronic asthma and contracted COVID-19. Plaintiff's complaint, however, is devoid of any allegations that he experienced any serious symptoms upon contracting COVID-19. From the complaint, as pled, the Court "cannot conclude that, when faced with a perfect storm of a contagious virus and the space constraints inherent in a correctional facility, [Defendants] here acted unreasonably by 'doing their best.'" *See Swain v. Junior*, 961 F.3d 1276, 1289 (11th Cir. 2020). The Court, therefore, will grant Defendants' motions to dismiss (Doc. Nos. 19, 24) and dismiss Plaintiff's complaint (Doc. No. 2) for failure to state a plausible Eighth Amendment claim.

## D.    Administration Exhaustion

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner must pursue all available avenues of relief through the applicable grievance system before initiating a federal civil rights action. *See* 42 U.S.C. § 1997e(a); *Booth v. Churner*,

532 U.S. 731, 741 n.6 (2001) ("[A]n inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues."). Section 1997e provides, in relevant part, that "[n]o action shall be brought with respect to prison conditions under [S]ection 1983 of this title, or any other [f]ederal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. *See Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007); *see also Booth*, 532 U.S. at 742 (holding that the exhaustion requirement of the PLRA applies to grievance procedures "regardless of the relief offered through administrative procedures").

The Third Circuit has further provided that there is no futility exception to Section 1997e's exhaustion requirement. *See Nyhuis v. Reno*, 204 F.3d 65, 75-76 (3d Cir. 2000). Courts have typically required across-the-board exhaustion by inmates seeking to pursue claims in federal court. *See id.* Additionally, courts have interpreted this exhaustion requirement as including a procedural default component, holding that inmates must fully satisfy the administrative requirements of the inmate grievance process before proceeding with a claim in federal court. *See Spruill v. Gillis*, 372 F.3d 218 (3d Cir. 2004); *see also Oriakhi v. United States*, 165 F. App'x 991, 993 (3d Cir. 2006) (providing that "there appears to be unanimous circuit court

consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court"). Courts have also concluded that inmates who fail to complete the prison grievance process in a full and timely manner are barred from subsequently litigating claims in federal court. *See, e.g., Bolla v. Strickland*, 304 F. App'x 22 (3d Cir. 2008).

This broad rule favoring full exhaustion allows for a narrowly-defined exception; if the actions of prison officials directly caused the inmate's procedural default as to a grievance, the inmate will not be required to comply strictly with this exhaustion requirement. *See Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000). However, courts also recognize a clear "reluctance to invoke equitable reasons to excuse [an inmate's] failure to exhaust as the statute requires." *See Davis v. Warman*, 49 F. App'x 365, 368 (3d Cir. 2002). Thus, an inmate's failure to exhaust will be excused only "under certain limited circumstances," *see Harris v. Armstrong*, 149 F. App'x 58, 59 (3d Cir. 2005), and an inmate may defeat a claim of failure to exhaust only by showing "he was misled or that there was some extraordinary reason he was prevented from complying with the statutory mandate." *See Warman*, 49 F. App'x at 368.

In the absence of competent proof that an inmate was misled by corrections officials, or some other extraordinary circumstances warranting a departure from

strict compliance with the exhaustion requirement, courts frequently reject inmate requests for their failure to exhaust to be excused. An inmate, therefore, may not excuse a failure to comply with these grievance procedures in a timely manner by simply claiming that his efforts constituted "substantial compliance" with this statutory exhaustion requirement. *See Harris*, 149 F. App'x at 59. Furthermore, an inmate may not avoid this exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him. *See Warman*, 49 F. App'x at 368. Consequently, an inmate's confusion regarding these grievances procedures does not, alone, excuse a failure to exhaust. *See Casey v. Smith*, 71 F. App'x 916 (3d Cir. 2003); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000) ("[I]t is well established that 'ignorance of the law, even for an incarcerated *pro se* petitioner, generally does not excuse prompt filing.'" (citations omitted)).

Recently, the Supreme Court considered what renders administrative remedies unavailable to an inmate such that a failure to exhaust may be excused. *See Ross v. Blake*, 136 S. Ct. 1850 (2016). The Court noted "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." *See id.* at 1859. First, an administrative procedure is not available "when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently

unwilling to provide any relief to aggrieved inmates." *See id.* Second, a procedure is not available when it is "so opaque that it becomes, practically speaking, incapable of use." *See id.* Finally, a procedure is unavailable when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misinterpretation, or intimidation." *See id.* at 1860. However, "once the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him." *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018). The Third Circuit recently established that:

> to defeat a failure-to-exhaust defense based on a misrepresentation by prison staff, an inmate must show (1) that the misrepresentation is one which a reasonable inmate would be entitled to rely on and sufficiently misleading to interfere with a reasonable inmate's use of the grievance process, and (2) that the inmate was actually misled by the misrepresentation.

*Hardy v. Shaikh*, 959 F.3d 578, 588 (3d Cir. 2020).

Defendants Wellpath and Dominic maintain that they are entitled to summary judgment because the "records produced by SOIGA and SCI Dallas reveal that Plaintiff has failed to file a single grievance related to his COVID-19 exposure." (Doc. No. 25 at 6.) Defendants Wetzel and Ransom have filed a certificate of concurrence in Defendants Wellpath and Dominic's motion. (Doc. No. 29.) The record before the Court indicates that Plaintiff has never appealed a grievance to

24

final review by SOIGA. (Doc. No. 24-2 at 1.) Moreover, Plaintiff has filed four (4) grievances from January 2020 to the present and none of them are related to the claims he raises in his instant complaint. (Doc. No. 24-3 at 1-8.) Plaintiff has not responded to Defendants' motion. Plaintiff, therefore, has not refuted the defense that he failed to properly exhaust the claims he raises in his instant complaint regarding the DOC's response to the COVID-19 pandemic. Accordingly, because the PLRA requires full and proper exhaustion prior to the initiation of Plaintiff's claims in federal court, and this Court cannot excuse compliance with those requirements, the motion for summary judgment will be granted on the basis that Plaintiff failed to properly exhaust his administrative remedies.

### E. Leave to Amend

Courts are cautioned that because of the liberal pleading standard, a plaintiff should generally be granted leave to amend before dismissing a claim that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The federal rules allow for liberal amendments in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations and internal quotations omitted). The Court may deny a motion to amend where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." *Id.* The Court must also determine that a proposed amendment would be futile if the complaint, as amended, would not survive a motion to dismiss for failure to state a claim. *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). Based on the foregoing, the Court concludes that it would be futile to grant Plaintiff leave to file an amended complaint because he failed to exhaust his administrative remedies prior to initiating the above-captioned action.

## V. CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions. (Doc. Nos. 19, 24.) Plaintiff will not be permitted to file an amended complaint in this matter. An appropriate Order follows.

s/ Sylvia H. Rambo<br>
United States District Judge

Date: June 3, 2021